310-237, people of the state of Illinois, a count by Richard Leonard v. Donald H. Sampson, affiliated by G. Williams. Please proceed. May it please the court, counsel, Mr. Sampson is an inmate at the Kankakee County Detention Center. He was charged by indictment with two counts of aggravated battery and one count of resisting a correctional officer. It was alleged that he had struck one officer in the face with his fist. He bit the hand of one officer and the officer who was trying to restrain him for the offense of resisting arrest, received a cut on his hand. The defendant filed a motion to dismiss the indictment, claiming that the testimony was based on hearsay and deliberately misleading. And the second ground was that the officer witnesses testimony at the grand jury hearing was insufficient to establish probable cause. The trial judge had a hearing on the motion to dismiss. The defendant and the only witness called was Detective Todd Huntley from the Kankakee County Sheriff's Department. Is there anything in the grand jury proceedings that would indicate the prosecutor intentionally or unintentionally withheld the Huntley, that's Huntley you're talking about? Yes. Huntley's status as a detective to mislead or deceive the jury? No, there is no evidence to show that either the state's attorney or the grand jury, I would even encourage you to read the grand jury minutes. If I'm not mistaken, I believe the grand jury testimony was only about ten pages long. Would you describe them as pretty sloppy? I did not describe them as sloppy. No, I, would you? I would believe they were not as neat as they should have been, but they were sufficient to establish a valid indictment. Because it was the defendant's motion, he was, the burden was on him to prove that the officer or the state's attorney intentionally misled the grand jury to seek and establish the indictment. I mean, it could have been, the questions could have been much more precise. They could have had much more clarity. I mean, where he was bitten, what happened. Yes, they were not very precise, but they were sufficient. The Supreme Court and the appellate court have stated that there's nothing bad or opposed to answering or asking leading questions or having one-syllable answers to those questions. The standard, I believe, would be, did the officer or state's attorney intentionally mislead the grand jury by this testimony that if, but for the prosecutor's alleged misconduct, the grand jury would have indicted this individual. And the answer to that question is no. The defendant did not meet any of his burdens. For the testimony to be deceptive, its hearsay nature has to be both concealed and constituted a denial of due process. There's nothing in the grand jury transcript that shows that it was concealed. And there's no evidence that it constituted a denial of due process. There's two prongs to that, to show alleged due process violations. It has to be unequivocally clear, and the prejudice to the defendant must be actual and substantial. Actual and substantial here means that the defendant would not have been indicted. But for the prosecutorial misconduct, it's always been the people's position that there was no misconduct. The evidence at the transcript, the evidence at the grand jury was not only sufficient, I agree that it could have been done better, but it was sufficient to prove probable cause in a grand jury proceeding. A defendant can only attack that in limited circumstances. In general, the defendant cannot challenge a grand jury indictment returned by a legally constituted grand jury. And furthermore, the defendant may not challenge the sufficiency of the indictment if some evidence was presented. And I believe that you would agree that there was some evidence presented. Even though the officer answered yes to leading questions, it does show that these three officers were punched, bitten, and sustained an injury, and all three went to the hospital. There's nothing in the law or the rule that shows or mandates that a detective has to identify himself. And there's no duty by the prosecution to disclose that the evidence is based on hearsay. Now the trial judge found that's an important aspect, but really the law doesn't, there's no law that says you have to disclose or not disclose. The law says there's no duty for the prosecution to disclose that the evidence was based on hearsay. I mean, that's not in the scope of something like intentionally or deliberately misleading somebody, is it? No, of course the prosecution cannot intentionally mislead the grand jury into believing something that isn't true. The trial judge relied heavily on the Oliver case. He said that this case was right on point with Oliver, which it is not. In Oliver, the prosecution put on an officer who was testifying to hearsay, but he perjured himself when he said that he actually saw a hand-to-hand transaction when he was not even there, he was just a hearsay witness. And that is why Oliver was reversed. He lied? Yes, the officer lied. And that was the reason why the jury was intentionally misled. And that was in Oliver? That was in Oliver. Oliver, yes. In this case, we don't have any perjury. We simply have the officer not disclosing who he is or disclosing that he was testifying based on hearsay. How many cases were going on at the same time? It's hard to tell from the record. Multiple cases. And you bring that up, the trial judge. How many people were there that died in this bunch? It's hard to tell from the record. Several. How did the jury make these distinctions? Like this was A, this was B? Yeah, that was one troubling aspect for the trial judge. The record's not clear how many cases were going on at that time and how many cases they were deliberating on, even though that may not be the best method, but it's not an inappropriate method. You're suggesting it happened? It did happen, yes. It does happen, and that's the way they do it in Kentucky County. The trial judge was a little bit upset or dismayed. He didn't like that procedure because that was not the way he did it when he was an assistant state's attorney. I believe that factored in his decision. Who was that you're speaking of, the trial judge? The trial judge, yes. The state's attorney. He was a state's attorney. The state's attorney? He was a state's attorney, not an assistant state's attorney. He had been a state's attorney. You said assistant. Oh, I'm sorry. Yes. Assistant state's attorney. I believe in the record when he said he had used assistant state's attorney, but I guess he was state's attorney also. Maybe he meant when he was doing the indictments. When he was doing the indictments, I think he was probably the assistant state's attorney. But we're dealing with a very experienced trial judge here. Yes, and he didn't like that method. He also didn't like the fact that the officer testified to leading questions, and all of his questions were yes, and there was one contradiction in one question that he asked, which hand was bitten, the left or the right? How do you respond to that? How do I respond to that? How did he respond? Oh, how did he respond to that? He found that it was a very sloppy way of doing the indictment. No, no, what was the answer to the question? Was it the right or left hand? First he testified that it was his right hand, and then later the trial judge stated that he had testified that it was to the officer's left hand. The trial judge felt that that was conflicting evidence, and that it was insufficient for probable cause. But most of the evidence was consistent except for that one inconsistency, and that would be something more for a trial court or a jury to determine whether it was his left hand or his right hand. It really doesn't matter because there's no doubt that the inmate bit one of the officer's hands. It doesn't matter, it's still aggravated battery. So if you look at the grand jury transcript, there is nothing in there that would indicate that the officer or the state's attorney did anything to deliberately conceal or mislead the grand jury. Furthermore, the evidence was sufficient. I go through that analysis in my brief to prove probable cause. If you don't have any questions, I will stop there and reserve the rest of my argument for a while. Thank you, counsel. Thank you. May it please the court. Counsel, I am Jay Wigman, an attorney for Defendant Abilene Donald Sampson. I believe that this case demonstrates the truism of one of the rules of thumb taught to probably all of us by our parents at one time or another, a rule that still applies because it pertains to judging, basically, and that is when one hears a story, whether it's an account in the newspaper, certainly the court does it when reading briefs. In this instance, the issue is when a witness testifies before the grand jury. In evaluating that testimony, you have to be able to consider the source. The deprivation of due process inherent in this case is that the grand jury was not told the source of the evidence that was presented to it, and thus, as was stated by the Illinois Supreme Court in People v. DiVincenzo, the state prevented the grand jury from returning a meaningful indictment by misleading it. DiVincenzo established a two-stage analytical framework for addressing the question of when a grand jury indictment should be dismissed, as it was in this case. The first question is very simply, was there a due process violation? And the second question is, did the violation affect the grand jury or induce it to indict? Now, turning to the first question, whether or not there was a due process violation, also in DiVincenzo, the Supreme Court set forth that there are three kinds of due process violations where the grand jury is concerned. The first is whether the prosecutor deliberately or intentionally misleads the grand jury. The second is using known, perjured, or false testimony. And the third is presenting other deceptive or inaccurate evidence. And that's the problem that we're dealing with here, is the claim that the prosecutor presented deceptive or inaccurate evidence. Deceptive in the sense that there was no question as to whether this was a summary, as was the case in the Second District case, I believe, of the Creek. There was no indication that this was merely the results of an investigation, but the question at the outset was, what happened? And the officer started outlining, there's no way for the grand jury to determine from that testimony, from as the court found a plainclothes officer, to indicate that he was not present at the scene. And I'll deal with the prejudice of that in a moment. But what occurred here was the giving of a set of facts to the jury as if they were from an eyewitness occurrence. That's how the evidence becomes misleading in this case. Now that's rather than misrepresentation, you're expanding misleading to more than lying. You're expanding it to omission. But doesn't the case law indicate that you can have an indictment solely based on hearsay? You can. Certainly, hearsay is not the problem. The problem is that there's no indication that it's hearsay. And while there are cases that indicate or that state very clearly you don't have to let the grand jury know or you don't have to affirmatively disclose to the grand jury that it's hearsay, each of those cases then distinguishes that claim immediately and says, but in this case there was no way for the grand jury to not know that this was not an occurrence witness. They state very clearly that the facts were such that there was no way that the grand jury could have been confused, that the officer was not present and, in fact, was summarizing. So the difficulty there is that it clearly indicates that where there is no disclosure to the grand jury, there, in fact, or if there's no way for the jury to know, then there needs to be a disclosure. Now, in this case, would there have been, from prior cases, knowledge on the part of that grand jury? I don't know, and that's part of the factual question here and part of the reason why the standard of review is an abuse of discretion as opposed to de novo because it's a question of fact as to whether the grand jury knew that the officer was not an occurrence witness but was merely the investigator. It appears that that was his first testimony before the grand jury on that day. That day was only the second session following the first by a two-week period. There are 13 grand jurors. Only 12 have to appear. There were apparently 12 that signed the initial order that was placed before them. You know, the notion that they requested this officer, I think, is speculative to the extent that the officer testified before the judge in this case that he had appeared before grand juries for the last six years. That was his assignment. So I think it was simply a regular part of his duties. No indication that the grand jurors themselves knew of his role or what he did. Okay, so there's really no, I mean, if one wanted to investigate, one would look at the prior two weeks where he testified allegedly with a disclosure on an investigating officer, not an occurrence witness, and look at the indictments that were issued in other cases that were signed by those presumably 13 but maybe 12 jurors and see if they have the same people present that signed that indictment in the incident case. We don't have any evidence of that. We don't, and I would also note that the grand jurors or the grand jury minutes in each of those two cases the two weeks before have a question from the state's attorney asking what is your position, what is your title, were you investigating this case, or in one instance, the officer says, I'm an officer with the Kankakee County Sheriff's Department and identifies himself affirmatively for the record. That did not occur in this case. But we actually had two weeks prior where the grand jury on their own responded to ask that question? No, not the grand jurors. I'm sorry, the assistant state's attorney. In terms of, okay, presenting the officer's testimony. Either the state's attorney had asked that question or the officer himself had identified himself. Okay. That didn't occur, though, at the next stage. And that, I think, was one of the things that concerned the trial judge, as it did in Oliver, where the special concurrence in Oliver talked about, and this is where I think the notion that these are leading questions, which are not normally improper, come into play because it, as the special concurrence in Oliver stated, sets up a box for the officer and limits his testimony. And that's where the contradiction then becomes important because there's like the 27th of 32 or 33 questions says, and he was bid on his left hand, is that correct? And the officer says yes. And then four questions later, it's, and he was bid yes on his right hand. The only time that he went beyond a monosyllabic answer, he directly contradicts a question just three or four questions before that. And that concerned the trial court. And that's going to get us to the prejudice question. Well, let me just cut to the chase on that, if I could, for a second. So the officer goes in and testifies the way he should have. He says, look, I'm a detective with the Kankakee County Sheriff's Police. I'm called to investigate an incident at the jail. And I talked to the correctional officer, so-and-so, who told me that the defendant punched me upside my head while I was in the course of my duties. That's what he should have said, right? Right. Okay. Do you think the grand jury is going to indict? Knowing that, sure. And in Oliver, the court made it clear that it was not finding that probable cause would not have been found. It's a low enough standard. You know, if the grand jury in this case knew that it was hearsay, although I think there are questions, and that certainly is part of the analysis regarding the contradictions, regarding some of the claims that could not have come from the evidence that concerned the court, such as the claim that he was shouting or yelling, which can't be told from the audio tape, or I'm sorry, the videotape. But in Oliver, the court very clearly analyzed the sufficiency of the evidence, but said we're not doing so as a determination of probable cause. And, in fact, we want to specifically say we are not saying that we would not have found probable cause had the fact of hearsay been known to the grand jury. But the sufficiency of the evidence was part of the calculus in determining, first, was there a due process violation? And how egregious was it? Was it an intentional, deliberately misleading falsehood? Or if it was to a lesser scale, if it was a complete accident, then that weighs into the equation as well. And then the question is the sufficiency of the evidence in terms of the prejudice. How prejudicial was this to the defendant? And the weaker the case gets, it seems to be the less egregious the misconduct needs to be, and the more egregious the misconduct, then the lesser the concern about the sufficiency of the evidence. Because one of the concerns about grand jury proceedings, and certainly one of the concerns by this trial judge, was whether upholding the grand jury finding would undermine the judicial system. There was a concern here about the mass bills of indictment that were being had. There were concerns about questions that don't even identify the witness for the grand jury from the record, and that's the only way you can evaluate it at this state. There's no ability to know that the procedures were properly followed, that the grand jury knew, and we shouldn't have to wonder whether they in fact knew it was hearsay. Because of that, and that's where then the sufficiency of the evidence comes into play. Who shouldn't have to wonder? Who shouldn't have to wonder whether or not it's hearsay? Well, this court shouldn't have to wonder. The trial court shouldn't have to wonder. The defendant shouldn't have to wonder whether or not. What case do you draw that from as far as whether a grand jury indictment is satisfactory? Well, but it's not a question of the sufficiency of the evidence. I'm saying. No, I'm not saying. I'm not talking about sufficiency of the evidence. When you say we have no idea if it was hearsay or not, there's cases saying it doesn't matter if it's hearsay. There are cases that say it doesn't matter if it's hearsay. That doesn't impact. That doesn't go to whether it was a deliberate or intentional misleading of the jury. Well, it didn't. Whether they prevented the grand jury from returning a meaningful indictment. That doesn't go to that question if it's hearsay, does it? No. Whether it's hearsay or not is not the issue. And it doesn't go to undue pressure or coercion, does it? If it's hearsay. To the extent that it wasn't disclosed. And while recognizing, again, that there are cases that say there's no affirmative duty to disclose, it says that in cases where it's clear to the grand jury that, in fact, this is hearsay. Here, there's no way for the grand jury to know that it's not hearsay. In a sense, are you trying to expand the law in this area? I don't believe so. I believe that Oliver, in Oliver, let's also keep in mind that there were two counts of the indictment that were troublesome. One where the officer said, I was there. And the other where he implied that he was there. By the answers to the questions that were asked of him, he made it seem as if he had been there and that it was not hearsay. And that troubled the court in Oliver, and we believe that it should trouble this court as well. Well, the Oliver court stated, and this is on that point, that the only defect in the testimony, that if the only defect in the witness's testimony were that it's hearsay in nature, was concealed, we would be hard pressed to determine that had the grand jury jurors known that the testimony was hearsay, they would not have indicted the defendant, sort of like Judge Schmidt was talking about. However, as the trial court indicated, the witness testimony, now this is in Oliver, was doubly deceptive. That was the troubling thing in Oliver. Not only was it hearsay, the hearsay nature was concealed, but it mischaracterized the observations. In other words, there was a lie about what the actual eyewitnesses saw. It was misleading. And Judge Erickson, in this case, was concerned with the evidence that he termed unreliable, that specifically the inconsistency was what he thought was unreliable. He was also troubled by the characterization of the defendant and of the officers as yelling, radioing for backup help. None of that could be supported by the testimony. And it, again, implied that it wasn't a hearsay, but that it was the observations that the officer had made being present on the scene. Was Judge Erickson sending a message to the State's Attorney's Office to tighten up their indictment? That may have been. And I believe that that was within his purview. As was stated in DiVincenzo, one of the questions, again, is whether the judicial system has been undermined by the misconduct of the prosecutor. And there's indication in the record that this was the second time that the defendant had been in this circumstance and had obtained the dismissal of the indictment against him. The judge commented that he was concerned that the State's Attorney's Office had not changed his procedures after that had happened, the first and only time, or only other time at this date, that he could think of in his 25 or 30 years of experience in that courthouse where an indictment had been dismissed. And so there's a little bit of question, or it seems to be in the judge's mind, as to whether there was unfair treatment given to the defendant in this case. But beyond that, there was the question of the multiple bills of indictment and the sloppy, his term, but also the term used in Oliver, the sloppy method of securing grand jury indictments. Well, in Oliver, again, it was doubly deceptive. That was a problematical aspect in Oliver. Well, in Oliver, but he, in Oliver, I believe there was a reference to sloppy procedures. And interestingly, that's the exact same language that the court used in this case as well. If there are no further questions, then I would ask that because the source of the evidence against him was not disclosed to the grand jury, allowing it to issue a meaningful indictment, I ask that the court affirm the trial court's discretion in striking and dismissing the indictment. I think the case law is clear that it says that the prosecution has no duty to disclose the hearsay to a grand jury. So a grand jury could sit there listening to a witness and not know its hearsay, but still enter a valid bill of indictment. One other issue that Judge Carter brought up was Judge Erickson sending the message. If you kind of read between the lines, he wasn't happy with this procedure. He didn't like the multiple one answer leading questions. He didn't like the grand jury deliberating on more than one case at one time. He didn't like the inconsistency that whether the officer was on the left hand or right hand. And he said that there was no evidence submitted to corroborate the officer's testimony. But you don't need that in a probable cause grand jury hearing. That's more going to trial whether the evidence is corroborated. What we have here is whether there was sufficient evidence. It looks like the judge was concerned about whether a whole mockery was made in this whole system over there. He was concerned about that. But what this court has to determine is whether the trial judge was correct in dismissing the indictment. And all that revolves around whether the prosecution or Officer Huntley intentionally misled the grand jury. I think if you look at the grand jury transcript, the answer has to be no. Does there have to be an intentionality element? If you look to the Supreme Court's case in DiVincenzo, they said it has to be intentional and deliberate. In Coke Counsel's brief, he suggests expanding that. In Oliver, they found that it was unintentional. And even if you unintentionally misled the jury, that was enough to undermine the grand jury indictment. However, DiVincenzo, the Supreme Court never went that far. They said deliberately or intentionally? Intentionally or deliberately. So that is the state of the law in Illinois. The language in Oliver was dicta. They did not have to reach that decision because, as Justice Carter said, this was a perjured testimony, which was the crux of the matter, which led to the defective indictment in Oliver. Do you have one, Manny? Quickly, the standard of review. I argued for de novo standard of review because this court has to decide whether the defendant was denied due process. Due process is a question of law, which de novo review applies. Generally, the abuse of discretion standard applies whether a trial judge properly dismissed an indictment. However, this court finds that the due process question, whether he was denied due process, then this court must affirm the trial judge's order. This court finds that there was no due process violation. This court should reverse the trial judge's order. The trial judge's discretion really doesn't come into play. This is a special case where this court has to decide a due process issue, which is the ultimate issue in the case. If you don't have any questions, I'd ask that you reverse the trial judge's order and remand the cause for further proceedings. Thank you, counsel. Thank you both. The court will take this case under advisement and render a decision with dispatch. In the meantime-